Alcala, J., filed a dissenting opinion.
I would adopt the portion of the trial court's findings of fact and conclusions of law recommending that Arthur Brown, applicant, be granted habeas relief from his conviction or, alternatively, his punishment. This Court's majority order appears to accept as correct the trial court's findings and conclusions that the firearms evidence introduced at applicant's trial was false, or at least, misleading, but it nonetheless denies habeas relief on the basis that this evidence was not material. In contrast, I agree with the habeas court's determination that this evidence was not only false or misleading but also material. I, therefore, respectfully dissent from this Court's order disregarding the habeas court's findings and conclusions. Because this Court's majority order and I agree that the firearms evidence was false or misleading, my dissenting opinion focuses on the dispute over whether the evidence was material to applicant's conviction or punishment.
I briefly review the firearms evidence that was introduced at applicant's trial and at the habeas hearing, and the habeas court's relevant findings of fact and conclusions of law. At trial, firearms expert C.E. Anderson testified that bullets, identified as EB1 through EB8, were recovered from six victims and that those bullets were matched to two guns linked to applicant. Anderson testified that he could "say absolutely"
*781 that EB1 and EB3 were fired from the Smith & Wesson and that EB2, EB5, EB6, and EB8 were fired from the Charter Arms. At the habeas hearing, evidence was presented and the habeas court determined that no evidence supports these conclusions made by Anderson. The habeas court found that Anderson's determination was "plainly wrong and false" with respect to his testimony that the Smith & Wesson had fired EB1 and EB3. The habeas court also found that Anderson's determination was "plainly false" with respect to his testimony that the Charter Arms fired EB2, EB5, EB6, and EB8. Given these conclusions by the habeas court, there is no firearms evidence showing that applicant was the shooter, and there appears to be no dispute that Anderson's trial testimony was false or misleading.
The dispute in this case concerns whether the false or misleading evidence was material to applicant's conviction or punishment. This Court's majority order surmises that even if applicant was not a shooter during the offense, the jury charge permitted the jury to convict him as a party to the offense, and thus the firearms evidence was immaterial to his conviction and punishment. This Court's majority order discusses the evidence showing applicant's role in the commission of the offense that would establish his guilt even in the absence of evidence that he was a shooter by noting that, for example, "the surviving witness observed Applicant holding victims at gunpoint, tying them up with bedsheets [sic], and verbally threatening to kill them." But that analysis oversimplifies this case by failing to consider the weakness of the remaining evidence of guilt. Although it is correct to say that some evidence other than the firearms evidence shows applicant's guilt as a party to this offense, it is also true, as found by the trial court's findings of fact and conclusions of law, that this other evidence of guilt was exceedingly weak when examined without the support of the erroneous firearms evidence.
As the trial court's findings and conclusions observe, the credibility of the State's witnesses was vigorously challenged at trial. Eyewitness and complainant Rachel Tovar provided conflicting accounts of the events to the police. Eyewitness and complainant Nico Cortez was unable to identify applicant in a photo spread when police visited him in the hospital. Additionally, Cortez identified applicant at applicant's trial, but he was unable to describe or identify applicant at the trials of the co-defendants. An eyewitness, Daniel Leija, said that he had been at Tovar's house earlier in the evening and had seen applicant there, but he initially picked someone other than applicant in a photo spread and identified applicant only after a police officer told him to look again. Another witness, Candelario Hernandez, could not identify applicant. Witness Bervis Ned changed details of his story at trial. Applicant's sisters each reported that they were pressured by police to make statements that conformed with the police officers' theory of the case. Applicant's sister, Carolyn Momoh, claimed that her statements that applicant confessed that he shot and killed six people and that she had owned a Charter Arms .38 revolver that was missing after the offense were false and products of coercion. I also note here that, even if applicant's sister's statement could connect applicant to a Charter Arms revolver, the firearms evidence, when properly considered in light of the habeas evidence, did not show that this type of revolver was used during this offense.
Given the importance of the firearms evidence that has now been proven to be *782 false or misleading, the habeas court made a conclusion of law that the erroneous firearms evidence materially impacted the outcome of the guilt or innocence portion of the trial. I agree with the habeas court's conclusion that applicant is entitled to habeas relief on this basis. The habeas court stated that, given that the defense subjected the State's case to considerable challenge with respect to the credibility of these witnesses, there is a reasonable likelihood that the false firearms evidence and the State's emphasis on this evidence at trial and during closing argument affected the jury's deliberations and, ultimately, its verdict. See Ex parte Weinstein , 421 S.W.3d 656, 665 (Tex. Crim. App. 2014) (false testimony is material if there is a reasonable likelihood that it affected the judgment of the jury). Given the weaknesses in the State's case when viewed in the absence of the firearms evidence, the habeas court would not be irrational in determining that the erroneous firearms evidence likely tainted the jury's view of the otherwise weak and conflicting evidence of applicant's guilt either as the shooter or as a party to this offense. I, therefore, respectfully disagree with this Court's majority order's determination that the firearms evidence is immaterial under the theory that applicant was guilty as a party to this offense.
This Court's majority order does not separately analyze this case with respect to whether applicant should obtain a new punishment hearing due to the false or misleading evidence in the event that he does not receive a new guilt or innocence trial. Alternatively, therefore, I conclude that, even if applicant's guilt could be sustained as a party to this capital murder, a jury could have rationally answered the special issues differently depending on whether applicant was guilty as a shooter or only as a party. Because a defendant's role as a shooter or as a party would likely affect the sentence that a jury may determine as appropriate for capital murder, the false or misleading evidence that suggested that applicant was a shooter requires a new sentencing hearing. Thus, as an alternative to granting an entirely new trial, I would grant relief in the form of a new punishment hearing.
I respectfully disagree with this Court's denial of habeas relief in all respects. I would either grant habeas relief in the guilt phase of trial, or I would grant relief in the form of a new trial on punishment. Alternatively, I would file and set this case for a more detailed review of the evidence. For these reasons, I respectfully dissent.